GRITT, JUDGE:
Claimants, Dr. Lyn Guy, Superintendent of Monroe County Schools, and the Monroe County Board of Education, brought this action to recover $112,571.38 which they allege was not paid to it by the Respondent, West Virginia Department of Education, when the respondent failed to allocate a supplemental appropriation proportionately to county boards of education in the 2004 fiscal year as provided by statute. The parties stipulated certain facts in this claim as follows:
1. The Court of Claims has jurisdiction over the subject matter of this action.
2. County boards of education in seventeen West Virginia counties, including Monroe
County, experienced a net increase in student enrollment from the 2001-2002 school year to the 2002-2003 school year.
3. In the 2002-2003 budget, enacted on March 17, 2002, the Legislature appropriated $ 1,204,196 for aid to counties experiencing increased student enrollment from file 2001-2002 school year to the 2002-2003 school year, which, when combined with the funds appropriated for that purpose and earned over from the preceding year, provided $1,473,344
to be allocated among the various county boards of education that had experienced such a net increase in student enrollment.
4. Piiorto the 2003-2004fiscal year, appropriations for “Increased Enrollment” regularly appeared in the budget bill as a distinct line item with an assigned activity code of 140.
5. The funds appropriated for increased student enrollment in the 2002-2003 budget, together with those appropriated for that purpose under the 2001-2002 budget and carried over, were insufficient to provide frilly for the increased enrollment in those counties experiencing a net increase in enrollment from the 2001-2002 school year to the 2002-2003 school year. The Department of Education therefore allocated those funds proportionately among all of the counties that experienced such a net increase in student enrollment, as required by § 18-9A-15 of the West Virginia Code. The portion of these funds allocated to Monroe County was $87,293.
*116 6. Prior to commencement of the 2003 general legislative session, the West Virginia Department of Education requested a supplemental appropriation of $3,006,256 to fund all counties that had experienced net increased enrollment during the 2002-2003 school year.
7. When House Bill 104 was introduced in the Legislature, it did not have a line-item entry for “Increased Enrollment” as in previous years.
8. Thereafter, on March 16, 2003, the Legislature enacted a supplemental appropriations bill, identified as H.B. 104, by which it appropriated the sum of $1,900,000 for “Traditional Increased Enrollment - 5 years through 12th grade” for the 2002-03 school year. This item was assigned an activity code of 997.
9. H.B. 104 did not contain any definition for the term “Traditional Increased Enrollment - 5 years through 12th grade”.
10. The Department of Education did not allocate the funds appropriated pursuant to H.B. 104 among all of the counties that experienced a net increase in student enrollment from the 2001-2002 school year to the 2002-2003 school year, and did not utilize the formula and procedures set forth in §18-9A-15 of the West Virginia Code with regard to the allocation of those funds as done in previous years.
11. The Department of Education allocated the funds appropriated for “Traditional Increased Enrollment - 5 years through 12th grade” pursuant to H.B. 104 among six county boards of education, each of which had experienced a net increase in student enrollment from one year to the next in at least three of the five years considered by the Department of Education. In allocating these funds, the Department of Education considered increases in student enrollment from the 1997-1998 school year to the 1998-1999 school year, from the 1998-1999 school year to the 1999-2000 school year, from the 1999-2000 school year to the 2000-2001 school year, from the 2000-2001 school year to the 2001-2002 school year, and from the 2001-2002 school year to the 2002-2003 school year. If a county board of education experienced a net increase in student enrollment in at least three of these years, it received an allocation of the appropriated funds in proportion to its increase in enrollment from the 2001-2002 school year to the 2002-2003 school year.
12. Because Monroe County experienced a net increase in student enrollment in only two of the five years considered by the Department of Education in allocating the funds appropriated
for “Traditional Increased Enrollment - 5 years through 12th grade” pursuant to H.B. 104, it was not allocated any of those funds.
13. For each of the four years immediately preceding the 2002-2003 school year, the Legislature had appropriated sufficient amounts to folly fund the increased student enrollment in all counties experiencing a net increase in student enrollment, the total amount appropriated for each of those years was sufficient to provide to each such county an amount equal to that county’s average per net pupil total state aid multiplied by the increase in that county’s net enrollment.
14. Had the West Virginia Department of Education allocated the appropriation made for “Traditional Increased Enrollment - 5 years through 12th grade” under H.B. 104 among all of the counties that experienced an increase in net student enrollment between the 2001-2002 school year and the 2002-2003 school year, in the maimer described in § 18-9A-15 of the West Virginia Code, the Monroe County Board of Education would have received allocations totaling $199,864.38 for increased enrollment during the 2002-2003 year, rather than an allocation of only $87,293.00 for increased enrollment during that year. In the event that the Court of Claims determines that the Monroe County Board of Education is entitled to relief in *117 this action, its damages would be $112,571.38.
15. On March 16,2003, the Legislature enacted H.B. 2050, which established the state’s budget for 2003-2004.
16. In RB. 2050, the Legislature appropriated $2,000,000 for “Traditional Increased Student Enrollment - 5 years through 12th grade” for the 2003-2004 school year.
17. These funds appropriated for “Traditional Increased Student Enrollment - 5 years through 12th grade” in the 2003-2004 budget were insufficient to provide fully for the increased enrollment in all of those counties experiencing a net increase in enrollment from the 2002-2003 school year to the 2003-2004 school year.
18. In allocating the funds appropriated in the 2003-2004 budget for “Traditional Increased Student Enrollment - 5 years through 12th grade”, the Department of Education considered only those county boards of education that had experienced a net increase in student enrollment from one year to the next in at least three of the five preceding years (that is, from the 1998-1999 school year to the 1999-2000 school year, from the 1999-2000 school year to the 2000-2001 school year, from the 2000-2001 school year to the 2001-2002 school year, from the 2001-2002 school year to the 2002-2003 school year, and from the 2002-2003 school year to the 2003-2004 school year). For county boards of education that had experienced a net increase in student enrollment from one year to the next in at least three of those years, the Department of Education allocated a share of the funds appropriated for “Traditional Increased Student Enrollment - 5 years through 12 th grade”, in proportion to each such county’s increase in student enrollment for the 2003-2004 school year.
19. Thereafter, on March 21, 2004, the Legislature enacted a supplemental appropriation bill identified as S.B. 1006, by which it appropriated an additional $615,000 for “Traditional
Increased Student Enrollment - 5 years to 12th grade” for the 2003-2004 school year.
20. In allocating the funds appropriated pursuant to S.B. 1006 for “Traditional Increased Student Enrollment - 5 years to 12th grade”, the Department of Education included all counties that had experienced a net increase in student enrollment, without regard to any requirement for an increase in enrollment in three of the preceding five years.
21. On November 16, 2004, the Legislature enacted another supplemental appropriation bill, identified as S.B. 3006, by which it appropriated an additional $664,292.00 for increased enrollment for the 2003-2004 school year. These funds were similarly allocated among all counties that had experienced a net increase in student enrollment, without regard to any requirement for an increase in enrollment in three of the preceding five years.
22. As a result of the appropriations contained in the 2003-2004 budget and the supplemental appropriations contained in S.B. 1006 and S.B. 3006, all counties that had experienced a net increase in student enrollment from the 2002-2003 school year to the 2003-2004 school year received the full amount of funding necessary to provide for those net increases.
In addition to the Stipulation of Facts agreed to by the parties, the Court held a hearing in this claim, during which certain exhibits were admitted in evidence. Post trial briefs filed by the parties also have been accepted by the Court. Counsel for the claimant objected to the acceptance of respondent’s post trial brief due the date on which the brief was filed. Further, respondent has raised an issue in its post trial brief that had not been raised at any stage of the proceeding up to and including the hearing, i.e., the fact that the supplemental appropriation at issue in the claim was to *118 be paid from the lottery fund rather than from general revenue as had been the funding source in prior years. In its post trial brief respondent argues that this fact relieved the respondent from following the general statute for proportioning funds to county boards of education for increased student enrollment. The Court has considered respondent’s post trial brief even though it was filed late. The Court is of the opinion that the late filing is not prejudicial to claimant. Claimant filed a brief in response which likewise was considered by the Court in its decision of this claim.
Accordingly, the Court has analyzed the positions of the parties with respect to the facts as put forth in the stipulation, the hearing of the claim, and the briefs filed by the parties. The issue in this claim is one of first impression with this Court. The issue, how a State agency distributes funds allocated to it by the Legislature, has not been considered in prior claims considered by the Court. Thus the Court has reviewed the Constitution of the State of West Virginia, the particular statute at issue, the language and provisions of House Bill 104, and the laws of this State in reaching its conclusion that the claimant Board of Education of the County of Monroe herein is entitled to an award.
The West Virginia Constitution specifically provides for the education of the children in our State. Article XII, Section 1 states that, “The Legislature shall provide, by general law, for a thorough and efficient system of free schools.” That article also relates to the funding for schools as stated in Section 5, as follows:
Support of Free Schools.
The Legislature shall provide for the support of free schools by appropriating thereto the interest of the invested “School Fund,” the net proceeds of all forfeitures and fines accruing to this state under the laws thereof and by general taxation of persons and property or otherwise. It shall also provide for raising in each county or district, by the authority of the people thereof, such a proportion of the amount required for the support of free schools therein as shall be prescribed by general laws.
Since this section provides that the appropriation be “by general taxation of persons and property or otherwise... .” the drafters of this section recognized that there may be funding sources other than general revenue which may be used to fund schools. Therefore, the fact that House Bill 104 used lottery money to fund the increased enrollment certainly does not amend the general law. Thus, the argument of the respondent that it could alter the method of allocation of funds to counties other than proportionately as provided in the general law logically fails.
The general laws that provide for a system of free schools are in Chapters 18 and 18 A of the W. Va. Code. The section at issue in this claim is found in Chapter 18, Article 9A, Section 15 and provides as follows:
§18 9A15. Allowance for increased enrollment.
(a) To provide for the support of increased net enrollments in the counties in a school year over the net enrollments used in the computation of total state aid for that year, there shall be appropriated for that purpose from the general revenue fund an amount to be determined in accordance with this section.
(b) On or before the first day of September, two thousand five, the State Board shall promulgate a rule pursuant to article three b, chapter twenty nine a of this code that establishes an objective method for projecting the increase in net enrollment for each *119 school district. The State Superintendent shall use the method prescribed by the rule to project the increase in net enrollment for each school district.
(c) The State Superintendent shall multiply the average total state aid per net pupil by the sum of the projected increases in net enrollment for all school districts and report this amount to the Governor for inclusion in his or her proposed budget to the Legislature. The Legislature shall appropriate to the West Virginia Department of Education the amount calculated by the State Superintendent and proposed by the Governor.
(d) The State Superintendent shall calculate each school district’s share of the appropriation by multiplying the projected increase in net enrollment for the school district by the average total state aid per net pupil and shall distribute sixty percent of each school district’s share to the school district on or before the first day of September of each year. The State Superintendent shall make a second distribution of the remainder of the appropriation in accordance with subsection (e) of this section.
(e) After the first distribution pursuant to subsection (d) of this section is made and after the actual increase in net enrollment is available, the State Superintendent shall compute the total actual amount to be allocated to each school district for the year. The total actual amount to be allocated to each school district for the year is the actual increase in the school district’s net enrollment multiplied by the average total state aid per net pupil. The State Superintendent shall make the second distribution to each school district in an amount determined so that the total amount distributed to the district for the year, in both the first and second distributions, equals the actual increase in net enrollment multiplied by the average total state aid per net pupil. The State Superintendent shall make the second distribution on or before the thirty first day of December of each year: Provided, That if the amount distributed to a school district dining the first distribution is greater than the total amount to which a district is entitled to receive for the year, the district shall refund the difference to the Department of Education prior to the thirtieth day of June of the fiscal year in which the excess distribution is made.
(f) If the amount of the appropriation for increased enrollment is not sufficient to provide payment in full for the total of these several allocations, each coimty allocation shall be reduced to an amount which is proportionate to the appropriation compared to the total of the several allocations and the allocations as thus adjusted shall be distributed to the counties as provided in this section: Provided, That the Governor shall request a supplemental appropriation at die next legislative session for the reduced amount.
(g) No provision of this section shall be construed to in any way affect the allocation of moneys for educational purposes to a county under other provisions of law.
The specific language at issue is in subsection (f) which provides that in the event that the appropriation for increased enrollment is not sufficient to pay each county so affected by an increase in enrollment then the county allocation “shall be reduced to an amount which is proportionate to the appropriation... and the allocations as thus adjusted shall be distributed to the counties as provided in this section:....” It appears that the intention of the statute is to provide that all counties which experience an increase in enrollment are heated equally when funds are appropriated by the Legislature to address this particular situation or the words “proportionate to the appropriation...shall be distributed” for this purpose would not be included in this specific statute.
The Court recognizes that the respondent was interpreting the provisions in the *120 supplemental appropriation bill (H.B. 104) based upon its assumption that ambiguous language in that bill was to be interpreted differently. Thus, it did not appropriate the funds provided by the supplemental bill in accordance with the general law applicable to the distribution of funds provided for counties which had an increase in enrollment for this particular fiscal year. The Court disagrees. The Court is of the opinion that the general law is to be followed unless the law has been specifically amended by the Legislature. Accordingly, it is the opinion of the Court that the respondent had a legal obligation and duty to follow the general statute rather than ambiguous language in a budget bill, i.e., the supplemental bill in question herein. A budget bill does not change the provisions of a general statute already in law which addresses the specific circumstance. The effect of respondent’s interpretation of this language is to benefit certain counties to the detriment of the claimant.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does make an award in the amount of $112,571.39 to the Board of Education of the County of Monroe.
Award to the Board of Education of the County of Monroe in the amount of $112,571.38.